Submitted on briefs February 4, affirmed February 23, 1921.

## STAILEY v. RESIMIUS.

### (195 Pac. 573.)

**Vendor and Purchaser—Evidence Held to Show Knowledge by Subsequent Purchaser of Validity of Mortgage.**

1. In a suit to quiet title against a mortgage executed by a widow, the record showing that the mortgagor originally held title, but that it was twice conveyed to others who gave deeds of reconveyance to mortgagor's husband, conditioned on repayment of the consideration of the original conveyances, thereby indicating they were intended as security, with evidence tending to show personal knowledge by plaintiff that the widow claimed title at the time of executing the mortgage when plaintiff purchased from her son after her death, *held* to show constructive and personal knowledge by plaintiff that the widow was the owner of the property, and not merely of a dower right therein at the time she executed the mortgage.

From Jackson: FRANK M. CALKINS, Judge.

In Banc.

May 20, 1908, C. M. Dann conveyed by warranty deed to Margaret J. Rumsey, together with other property, Lots 13, 14, and 15 in Block 4 of Crowell's Addition Amended, to the City of Medford, in the State of Oregon, and the deed was duly filed for record September 30, 1908. On March 31, 1909, Margaret J. Rumsey executed to her husband, B. H. Rumsey, a general power of attorney, in and by which she did "make, appoint and constitute B. H. Rumsey (my husband) my lawful attorney in fact, to sign my name to all, or any papers conveying property situated and known as The Amended Plat of the Crowell Addition to the City of Medford, Jackson County, Oregon. To do all business whatsoever in my name." This instrument was recorded April 2, 1909. On April 1, 1910, B. H. Rumsey, for himself, and as attorney in fact for his wife, in consideration of $1,000, conveyed the lots described in the complaint

to M. Bellinger, by a warranty deed which was duly filed for record on April 2d. Concurrent therewith, M. Bellinger and his wife, for a consideration of $1,000, signed a special warranty deed of the same premises, to and in favor of B. H. Rumsey, which was placed in escrow in the Jackson County Bank at Medford, under an agreement which recited that should Rumsey pay, or cause to be paid, to Bellinger, on or before April 1, 1911, $1,000, with interest from date at the rate of 8 per cent per annum, the deed should be delivered to Rumsey. Under this agreement, the deed was so delivered and duly filed for record May 11, 1910. On September 17, 1913, B. H. Rumsey and his wife, for a consideration of $800, executed to D. B. Soliss a warranty deed of the same lots, which was duly filed for record September 18th. On September 17, 1913, D. B. Soliss and his wife, for an express consideration of $800, made a special warranty deed for the same lots in favor of B. H. Rumsey, which conveyance was duly recorded on May 14, 1917. Margaret J. Rumsey executed a mortgage to the defendant, William Resimius, upon Lots 13, 14, and 15 in Block 4, Crowell's Addition to the City of Medford, on May 10, 1917, and this mortgage was duly filed for record on May 14, 1917.

B. H. Rumsey died in Jackson County, Oregon, on January, 25, 1917, leaving as his only heirs his widow Margaret. J. Rumsey, and a son, Harold B. Rumsey. After the execution of her mortgage to the defendant, Margaret J. Rumsey died, leaving their son, Harold B. Rumsey, as the only heir of the deceased father and mother.

On January 19, 1918, Harold B. Rumsey and his wife, for a consideration of $100, conveyed the premises described in the complaint, and Lot 21 of said

99 Or.—26

Block 4, to plaintiff William Stailey, who ever since has been, and is now, in possession of, and holds the record title to the property.

On June 22, 1918, the plaintiff commenced a suit to quiet title, alleging that he is the owner in fee simple and in possession of the premises; that the defendant has, or claims to have, some right, title or interest therein by virtue of his mortgage for $600 thereon, and that it is a cloud or lien upon his title; that in truth and in fact it is not a valid lien and should be discharged of record.

For answer the defendant pleads his mortgage; that it has not been paid and is now in force and effect, and that at the time it was executed Margaret J. Rumsey was the actual owner of the property; that the plaintiff had personal knowledge of all the facts and surrounding circumstances; that he was not an innocent purchaser and did not act in good faith in acquiring the title; that the value of the property ranged from $1,000 to $1,500, and that through fraud and deceit he acquired the title for $100; that the $600 which was loaned by the defendant to Margaret J. Rumsey on the mortgage was used by her to obtain the deed of the property from Soliss and his wife to B. H. Rumsey; that the warranty deed to Bellinger of date April 1, 1910, and that to Soliss of September 17, 1913, were mortgages, the one to secure an existing debt of $1,000, the other to secure a debt of $800.

For reply, the plaintiff denies all the material allegations of defendant's further and separate answer, and affirmatively alleges that he bought the property in good faith; that he was informed and believed that the mortgage of $600 was a lien only upon the life estate of Margaret J. Rumsey, and that at the time

of the purchase he believed that he was getting a fee-simple title, free and clear of any encumbrance.

Testimony was taken in open court. Findings of fact were made and a decree was rendered to the effect that the plaintiff had actual knowledge of defendant's mortgage; that defendant's mortgage is a valid and binding lien upon the property, and refusing plaintiff relief; from which decree plaintiff appeals, claiming that the court erred in receiving oral testimony as to the history of the transactions between Rumsey and his wife or that the deeds were, in fact, mortgages; in holding that the defendant's mortgage was a valid lien upon the property, and in not rendering a decree as prayed for in the complaint.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. F. J. Newman.*

For respondent there was a brief and an oral argument by *Mr. H. A. Canaday.*

JOHNS, J.—1. It will be noted that in the inception the record title to the property was in the name of Margaret J. Rumsey, and the first conveyance from her was made by her husband as her attorney in fact.

At the time plaintiff received his deed, he legally knew from the county records that the property was deeded to Margaret J. Rumsey on May 20, 1908, and that she held the record title until April 1, 1910, when, through the general power of attorney which she gave her husband on March 31, 1909, the lots were conveyed to M. Bellinger for an express consideration of $1,000; that upon the same day and for the same consideration they were reconveyed by Bellinger and wife to B. H. Rumsey by a deed which was recorded

on May 11, 1910.  He also knew that on September
17, 1913, B. H. Rumsey and wife, for a consideration
of $800, made a warranty deed of the property to
D. B. Soliss, which was recorded September 18th;
that at the same time and for the same consideration
Soliss and his wife executed a special warranty deed
reconveying the property to B. H. Rumsey, and that
this deed was recorded on May 14, 1917, the identical
day on which the defendant's mortgage was filed for
record.  Such record facts, standing alone, are signifi-
cant, and tend to show that both of the Rumsey deeds
were, in fact, mortgages to secure existing debts, and
that the debts were paid at the time the reconveyance
was filed for record.

It appears from the oral evidence that E. H. Fehl
and D. G. Fehl were a real estate firm at Medford
doing business under the firm name of Fehl Invest-
ment Company, and that E. H. Fehl is the son-in-law
of the plaintiff; that in truth and in fact the plaintiff
holds the record title to the property for the use and
benefit of his son-in-law, or the firm, and that the
title was taken in the name of the plaintiff for tempo-
rary purposes and to secure him for the $100 which
he advanced at the time the deed was executed.

After the death of her husband, the widow, Mar-
garet J. Rumsey, continued in the actual possession
of the lots, residing thereon at the time the mortgage
was executed to the defendant and until some time
later, when she went to Montana.  While in such pos-
session, she employed C. C. Pierce, another real estate
broker, to negotiate a loan to pay off the Soliss mort-
gage, representing to him that, ''The title is clear in
my name, except the claim of Mr. Soliss and the
street improvement assessments.''  Through the ser-
vices of Pierce she obtained a loan of $600 from the

defendant, all of which was used to pay off the balance then due and owing upon the Soliss mortgage. When this transaction was completed, and after Mrs. Rumsey had moved to Montana, Pierce, acting for her, undertook to find a purchaser for the property, and, in the event of a sale, was to receive a commission for his services. To that end, and for that purpose, he entered into an agreement with Fehl Brothers by which they were to act together and divide the commission. The house and three lots were listed for $900, and a prospective purchaser was found for the house and one lot, at a price sufficient to satisfy the mortgage. Through their dealings with Pierce, the Fehls knew that Mrs. Rumsey claimed to be the owner of the property, and that the money obtained by means of the defendant's mortgage was used to procure the deed from Soliss who then held the record title to the property. In other words, the record title could not become vested in Rumsey without the payment of the amount due Soliss, and the money for that purpose was obtained from the defendant through the execution of the mortgage on the property by the widow, Margaret J. Rumsey.

The conveyance from the son and only heir to the plaintiff is an ordinary quitclaim deed and conveys nothing more than the right, title, or interest which the grantor then had.

The evidence shows that the Fehls did not examine the records until after they had purchased the property and received the deed in the name of the plaintiff, and that the idea of defeating defendant's mortgage was conceived after they had made an examination of the records. This is apparent from a discussion of Pierce and D. G. Fehl relating to the proposed sale, wherein Fehl told him:

"You just leave it to me. I have found out something new and I will tend to it. I will have some new developments soon.".

Later, Earl Fehl stated that he doubted about that mortgage being good on account of Mrs. Rumsey's only having a dower right, and Delbert made the same statement, but he thought that it would cover her dower rights. Pierce further testifies that:

"Mr. Earl Fehl told me that he had bought the property and had put it in his father-in-law's name because he did not have the money to pay the $100 and got the money of his father-in-law, and that after a while the property would come back in his name and that he was really the purchaser, and he at that time stated that he did not consider the mortgage was worth the paper it was written on."

In addition to this, the evidence is conclusive that the plaintiff had personal knowledge of all the surrounding facts and circumstances.

Upon either theory, the plaintiff does not have any standing in a court of equity. The decree is affirmed.

AFFIRMED.